OPINION
{¶ 1} On August 13, 2002, appellee, the Delaware County Department of Jobs and Family Services filed a complaint alleging Dakota McDonald born October 28, 1996 and Harley McDonald born December 1, 1999, to be dependent children. Mother of the children is appellant, Amy McDonald. She is currently incarcerated for a fourteen year prison term. Father died on July 12, 2002 following a fatal motorcycle accident.
 {¶ 2} A hearing was held on October 15, 2002. By judgment entry filed October 31, 2002, the trial court found the children to be dependent, temporarily committed the children to appellee for out of home placement, denied appellant any further visitation and stated permanent custody was eminent.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "The trial court committed gross abuse of discretion in terminating all visitation and/or contact between the mother and her children without considering any other possible alternatives."
 I {¶ 5} Appellant claims the trial court erred in terminating visitation and in directing appellee to file for permanent custody. We disagree.
 {¶ 6} R.C. 2151.353 governs disposition of abused, neglected, or dependent child. Subsection (A) states the following:
 {¶ 7} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 8} "(1) Place the child in protective supervision;
 {¶ 9} "(2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified foster home or in any other home approved by the court;
 {¶ 10} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child;
 {¶ 11} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding.
 {¶ 12} "(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 13} "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
 {¶ 14} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414
of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 15} "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
 {¶ 16} "(6) Order the removal from the child's home until further order of the court of the person who committed abuse as described in section 2151.031 of the Revised Code against the child, who caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, or who is the parent, guardian, or custodian of a child who is adjudicated a dependent child and order any person not to have contact with the child or the child's siblings."
 {¶ 17} Appellant did not contest the fact that the children were dependent, nor that appellant as the sole living parent was serving a prison term of fourteen years. T. at 2-4. Prior to the hearing, the children had contact with appellant via the telephone and a monthly visit.
 {¶ 18} Appellant argues she has applied for clemency, but she "will not be eligible for any kind of judicial release for a number of years, and all her motions to either reduce or modify sentence has been denied." T. at 5. The children's counselor recommended to appellee that visitation with appellant should "either be reduced or simply stopped." Id. The caseworker, Lisa Cabot, stated she would "also like to see visitation be terminated." T. at 7.
 {¶ 19} The temporary foster father told the trial court after visiting appellant in jail, the children return traumatized and "never ask for their mother." T. at 8. He also stressed the children have become very attached to their temporary placement and need to be placed in a permanent home. Id. There is currently a couple interested in adopting the children. T. at 8-9.
 {¶ 20} It appears from the evidence presented that clemency is a long shot. Appellant's present incarceration is the result of a parole violation. T. at 14-15. In considering the evidence, the trial court concluded the following at 17-18:
 {¶ 21} "I don't think I've ever had a case where the potential for reunification is so limited as a result of a prison sentence. Typically, it is that the relationship is preserved until there's a decision on permanent custody and then some time given during appeal. Even then sometimes there's some visitation. Under these circumstances, I'm satisfied that continued visitation is not in the children's best interest. If, however, this would go for very long, I think what I'll do is set a review in a month, maybe five weeks. I think by that time, hopefully, even well before that, there is a foster placement and a potential for adoption. That can, hopefully, be decided before the next hearing. But to keep that moving and then if there would be some delay, or if it appears like there was going to be some continuing delay, then I'll continue — there's a potential for reconsidering the visitation if it appears if it's stuck and something holding up any motion for permanent custody and/or potential permanent placement. So, temporary custody then, disposition will be that temporary custody is placed with the Department of Jobs and Family Services."
 {¶ 22} Given the trauma caused by the visitation and the lack of the probability of release in the near future, we find the trial court did not err in terminating visitation while still leaving an option open and in directing appellee to file for permanent custody.
 {¶ 23} The sole assignment of error is denied.
 {¶ 24} The judgment of the Court of Common Pleas of Delaware County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J., Gwin, P.J. and Boggins, J. concur.
Topic: Temporary order; visitation denied.